1   PATRICIA K. GILLETTE (STATE BAR NO. 74461)
    pgillette@orrick.com
2   MICHAEL D. WEIL (STATE BAR NO. 209056)
    mweil@orrick.com
3   KATINA B. MINER (STATE BAR NO. 244914)
    kminer@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA  94105-2669
6   Telephone:    +1-415-773-5700
    Facsimile:    +1-415-773-5759
7

    Attorneys for Defendant
8   BANK OF AMERICA, NATIONAL ASSOCIATION

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13  WILLIAM MARR,                          Case No. CV 09-05978 WHA

14            Plaintiff,                    **DEFENDANT'S NOTICE OF
                                            MOTION AND MOTION FOR
15       v.                                 PARTIAL SUMMARY JUDGMENT
                                            (FED. R. CIV. P. 56);
16  BANK OF AMERICA NATIONAL                MEMORANDUM OF POINTS AND
    ASSOCIATION; and DOES 1 through 100,    AUTHORITIES IN SUPPORT OF
17  inclusive,                              SAME**

18            Defendants.                   Judge:    The Hon. William Alsup
                                            Courtroom: 9, 19th Floor
19                                          Date:     March 10, 2011
                                            Time:     8:00 a.m.
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   SUMMARY OF FACTS AND ARGUMENTS ........................................................ 2

II.  STATEMENT OF FACTS ....................................................................................... 3

    A.   Plaintiff Agreed To The Bank's Commission Compensation Plans ...................... 3

    B.   The Bank Reconciled Underages, Waived Fees and Plaintiff's Assistant's
        Commissions With Plaintiff's Commissions .......................................................... 4

        1.   The Bank's Overage/Underage Policy ......................................................... 4

        2.   Plaintiff's Compensation Plan Provided His Commissions Would
            Be Reconciled With Waived Fees ................................................................. 5

        3.   The Bank Provided Plaintiff With A Paid Full-Time Assistant And
            Plaintiff Chose To Hire Another Assistant ................................................... 6

    C.   The PFUN Policy Applied To Every Employee In Plaintiff's Region .................. 6

    D.   Plaintiff's Disability Benefits Are Provided Under An ERISA Plan .................... 7

        1.   Adjustments To Plaintiff's LTD Benefits Were Made In His Favor ........ 9

        2.   Plaintiff Complained Again And Asked For A Higher Rate ................... 10

III. PROCEDURAL BACKGROUND .......................................................................... 11

IV.  ARGUMENT .......................................................................................................... 11

    A.   Plaintiff's Claims Regarding His LTD Benefits Fail ......................................... 11

        1.   Plaintiff's LTD-related claims are preempted by ERISA ........................ 11

        2.   Plaintiff's LTD Claims Are Precluded Because He Failed To
            Exhaust Internal Remedies ......................................................................... 14

        3.   Plaintiff Sued the Wrong Entity ................................................................. 14

        4.   Plaintiff received benefits consistent with the Plan ................................. 15

    B.   Plaintiff's Fifth Cause of Action For Breach of The Implied Covenant Fails ...... 16

        1.   Plaintiff's claims regarding mortgage rates fails ..................................... 16

        2.   Plaintiff's implied covenant claim regarding referrals sources fails ........ 17

    C.   Plaintiff's Fraud And Negligent Misrepresentation Claims Fail ........................ 18

        1.   Plaintiff cannot prove intent or negligence ............................................... 18

        2.   Plaintiff cannot prove justifiable reliance ................................................. 19

        3.   Plaintiff's damages are too speculative. .................................................... 20

    D.   Plaintiff's Second Cause of Action Fails, In Part .............................................. 21

        1.   Plaintiff's claims regarding deductions for waived loan fees fail ............ 21

        2.   Deductions to Plaintiff's commissions for his assistants do not
            violate Section 221 ..................................................................................... 23

    E.   Plaintiff's Claims Arising Before 2006 Are Barred By Prior Settlement ............ 23

    F.   The Statute Of Limitations Bars Claims Arising Before August 20, 2005 ........... 25

    G.   Plaintiff's Business & Professions Code Section 17200 Claim Fails ................. 25

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    V.     CONCLUSION ...................................................................................... 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aetna Health Inc.* v. *Davila*,
  542 U.S. 200 (2004) ........................................................................................ 8

*Aloha Airlines, Inc.* v. *Ahue*,
  12 F.3d 1498 (9th Cir. 1993) .......................................................................... 9

*Amato* v. *Bernard*,
  618 F.2d 559 (9th Cir. 1980) .......................................................................... 10

*Babikian* v. *Paul Revere Life Ins. Co.*,
  63 F.3d 837 (9th Cir. 1995) ............................................................................ 11

*Cefalu* v. *B.F. Goodrich Co.*,
  871 F.2d 1290 (5th Cir. 1989) ........................................................................ 12

*Chamblin* v. *Reliance Standard Life Ins. Co.*,
  168 F. Supp. 2d 1168 (N.D. Cal. 2001) ...................................................... 8, 9

*Champagne* v. *City & County of San Francisco, No. C 06-05425*,
  2008 U.S. Dist. LEXIS 36651 (N.D. Cal. May 5, 2008) .......................... 17

*DeVoll* v. *Burdick Painting Inc.*,
  35 F.3d 408 (9th Cir. 1994) ............................................................................ 9

*Dosier* v. *Miami Valley Broad. Corp.*,
  656 F.2d 1295 (9th Cir. 1981) ........................................................................ 20

*Evans* v. *Safeco Life Ins. Co.*,
  916 F.2d 1437 (9th Cir. 1990) ........................................................................ 11

*Farr* v. *U.S. West, Inc.*,
  58 F.3d 1361 (9th Cir. 1995) .......................................................................... 9

*Funkhouser* v. *Wells Fargo Bank, N.A.*,
  289 F.3d 1137 (9th Cir. 2002) ........................................................................ 10

*Gelardi* v. *Pertec*,
  761 F.2d 1323 (9th Cir. 1985) ........................................................................ 11

*Geweke Ford* v. *St. Joseph's Omni Pref. Care Inc.*,
  130 F.3d 1355 (9th Cir. 1997) ........................................................................ 10

*Gibson* v. *Prudential Ins. Co.*,
  915 F.2d 414 (9th Cir. 1990) .......................................................................... 11

*Greany* v. *W. Farm Bureau Life Ins. Co.*,
  973 F.2d 812 (9th Cir. 1992) .......................................................................... 12

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Han* v. *Mobil Oil Corp.*,

4        72 F.3d 872 (9th Cir. 1995) ........................................................................... 11

    *Harara* v. *ConocoPhillips Co.*,
5        377 F. Supp. 2d 779 (N.D. Cal. 2005) ............................................................ 21

6    *Harris* v. *Vector Mktg. Corp.*,
        No. C-08-5198, 2010 U.S. Dist. LEXIS 122126 (N.D. Cal. Nov. 15, 2010) ........... 18
7
    *Wamboldt* v. *Safety-Kleen Sys.*,
8        2007 U.S. Dist. LEXIS 65683 (N.D. Cal 2007) ................................................ 18

9    *Jenkins* v. *MCI Telecomm. Corp.*,
        973 F. Supp. 1133 (C.D. Cal. 1997) ............................................................... 15
10
    *Kline* v. *United Parcel Service, Inc., No. C 09-00742 SI*,
11        2010 U.S. Dist. LEXIS 46237 (N.D. Cal. Apr. 7, 2010) ..................................... 21

12    *Landmark Dev. Corp* v. *Chambers Corp.*,
        752 F.2d 369 (9th Cir. 1985) ......................................................................... 17
13
    *Lewis* v. *John Hancock Mutual Life Ins. Co.*,
14        6 F. Supp. 2d 244 (S.D.N.Y. 1998) ................................................................ 10

15    *Lies* v. *Farrell Lines, Inc.*,
        641 F.2d 765 (9th Cir. 1981) ........................................................................... 7
16
    *Lopes* v. *Vieirra*,
17        No. CV-F-06-1243, 2010 U.S. Dist. LEXIS 104417 (E.D. Cal. Sept. 30, 2010) ......... 16

18    *Madden* v. *ITT Long Term Disability Plan*,
        914 F.2d 1279 (9th Cir. 1990), *cert. denied* 498 U.S. 1087 (1991) ..................... 11
19
    *Metropolitan Life Ins. Co.* v. *Taylor*,
20        481 U.S. 58 (1987) ....................................................................................... 8

21    *Officers for Justice* v. *Civil Service Comm'n of City & County of San Francisco*,
        688 F.2d 615 (9th Cir. 1982) ......................................................................... 20
22
    *Orozco* v. *United Air Lines, Inc.*,
23        887 F.2d 949 (9th Cir. 1989) ......................................................................... 10

24    *Pilot Life Ins. Co.* v. *Dedeaux*,
        481 U.S. 41 (1987) ........................................................................................ 9
25
    *Providence Health Plan* v. *McDowell*,
26        361 F.3d 1243 (9th Cir. 2004) ......................................................................... 9

27    *Providence Health Plan* v. *McDowell*,
        385 F.3d 1168 (9th Cir. 2004) ......................................................................... 9
28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3   *Scott* v. *Gulf Oil Corp.*,
        754 F.2d 1499 (9th Cir. 1985) ............................................................. 11

4

    *Shaw* v. *Delta Air Lines, Inc.*,
5        463 U.S. 85 (1983) .............................................................................. 9

6   *Straub* v. *W. Union Tele. Co.*,
        851 F.2d 1262 (10th Cir. 1988) .......................................................... 12

7

    *Valerio* v. *Boise Cascade Corp.*,
8        80 F.R.D. 626 (N.D. Cal. 1978) ......................................................... 20

9   *Valles* v. *Ivy Hill Corp.*,
        410 F.3d 1071 (9th Cir. 2005) ............................................................ 18

10

    *Williams* v. *Caterpillar, Inc.*,
11        720 F. Supp. 148 (N.D. Cal. 1989) ..................................................... 12

12

**STATE CASES**

13  *Asmus* v. *Pac. Bell*,
        23 Cal. 4th 1 (2000) ........................................................................... 13

14

    *Aubry* v. *Goldhor*,
15        201 Cal. App. 3d 399 (1988) .............................................................. 20

16  *DiGiacinto* v. *Ameriko-Omserv*,
        59 Cal. App. 4th 629 (1997) ............................................................... 13

17

    *Foley* v. *Interactive Data Corp.*,
18        47 Cal. 3d 654 (1988) ........................................................................ 13

19  *Guz* v. *Bechtel Nat'l, Inc.*,
        24 Cal. 4th 317 (2000) .................................................................. 13, 14

20

    *Koehl* v. *Verio, Inc.*,
21        142 Cal. App. 4th 1313 (2006) ...................................................... 17, 19

22  *Lazar* v. *Superior Court*,
        12 Cal. 4th 631 (1996) ....................................................................... 14

23

    *Randell* v. *Levi Strauss & Co., No. C 05-1047 CW*,
24        2006 WL 1310464 (N.D. Cal. May 12, 2006) .................................... 15

25  *Rochlis* v. *Walt Disney Co.*,
        19 Cal. App. 4th 201 (1993) .......................................................... 15, 16

26

    *Slivinksy* v. *Watkins-Johnson Co.*,
27        221 Cal. App. 3d 799 (1990) ........................................................ 15, 16

28

- iii -

# TABLE OF AUTHORITIES
### (continued)

Page

*Steinhebel* v. *Los Angeles Times Commn'cns, LLC*,
    126 Cal. App. 4th 696 (2005) ................................................................ 17

*Tarmann* v. *State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153-158-59 (1991) ....................................................... 15

*Turner* v. *Anheuser-Busch, Inc.*,
    7 Cal. 4th 1238 (1994) ................................................................... 15, 16

*Vicko Ins. Services* v. *Ohio Indemnity Co.*,
    70 Cal. App. 4th 55 (1999) .................................................................. 19

## DOCKETED CASES

*Franklin et al* v. *Bank of America, N.A.*,
    Case No. C05 00519 ........................................................................... 20

## FEDERAL STATUTES

29 U.S.C. § 1002(1)-(3) .......................................................................... 8

29 U.S.C. § 1102 ................................................................................... 12

29 U.S.C. §§ 1132(a) ............................................................................... 8

29 U.S.C. §§ 1144(a) ............................................................................... 8

Fed. Rule Civ. Proc. 56 ............................................................................ 1

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ........................................................... 3, 21

Cal. Bus. & Prof. Code § 17208 ............................................................... 21

Cal. Code Civ. Proc. § 338(a) .................................................................. 21

Cal. Labor Code § 200 .............................................................................. 8

Cal. Labor Code § 221 ..................................................................... 1, 2, 21-23

Cal. Labor Code § 224 ....................................................................... 19, 23

Cal. Labor Code § 2802 ..................................................................... 11, 25

## NOTICE OF MOTION AND MOTION

**TO:     PLAINTIFF WILLIAM MARR AND HIS ATTORNEY OF RECORD.**

PLEASE TAKE NOTICE that on March 10, 2011 at 8:00 a.m., or as soon thereafter as the matter may be heard before the Honorable William Alsup in Courtroom 9, 19th Floor of the above-titled Court located at 450 Golden Gate Ave., San Francisco, California, Defendant Bank of America, National Association ("the Bank" or "Defendant") will move, and hereby does move, pursuant to Federal Rule of Civil Procedure 56, for an order granting partial summary judgment in its favor on claims set forth in Plaintiff's Second Amended Complaint for Damages.

Defendant's motion is made on the grounds that there is no genuine issue as to any material fact and the Bank is entitled to a judgment as a matter of law with respect to the following claims for relief: (1) Part of Plaintiff's First Cause of Action for failure to reimburse Expenses; (2) Part of Plaintiff's Second Cause of Action for allegedly unlawful wage deductions; (3) Plaintiff's entire Third Cause of Action under Labor Code Section 200 for alleged failure to pay Long-Term Disability benefits; (4) Plaintiff's entire Fourth Cause of Action for breach of contract for alleged failure to pay Long-Term Disability benefits; (5) Plaintiff's entire Fifth Cause of Action for breach of an implied covenant for alleged failure to pay Long-Term Disability benefits, setting interest rates in bad faith, and preventing Plaintiff's receipt of referrals from other banking centers; (6) Plaintiff's entire Seventh Cause of Action for fraud; (7) Plaintiff's entire Eighth Cause of Action for negligent misrepresentation; and (8) Part of Plaintiff's Sixth Cause of Action for violation of Business & Professions Code section 17200. The Bank also moves for summary judgment on all claims for alleged unlawful deductions or unreimbursed expenses arising before January 1, 2006 because they are barred by a prior settlement and/or arising before August 20, 2005 because they are barred by the applicable statutes of limitations.

The motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Michael D. Weil and Michael Joseph, the accompanying exhibits and deposition transcripts submitted in support of the motion, the Request for Judicial Notice, and all pleadings and papers on file in this action, including such other evidence and arguments as may be presented at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF FACTS AND ARGUMENTS.

This is a case about overreaching.  Plaintiff Bill Marr ("Plaintiff") was employed by Defendant Bank of America, National Association ("the Bank") as a Mortgage Loan Officer ("MLO") in Folsom, California from September 2004 to December 2010.  Plaintiff's Second Amended Complaint asserts a host of scattered and unrelated contract, wage deduction, unreimbursed expenses, and fraud claims regarding the Bank's Long Term Disability Plan and Compensation Plan for commissioned employees.  These Plans were fully integrated and clear.

Nevertheless, Plaintiff attempts to insert implied terms or assert oral modifications to these agreements to no avail.  It is "black letter law" that, where an agreement is written and fully integrated, the language of the contract controls.  There is no breach.  In addition, all common law claims relating to Plaintiff's Long Term Disability benefits are preempted by ERISA.  Accordingly, the Bank seeks partial summary judgment on the following claims:

<u>Long Term Disability Claims</u>.  Plaintiff claims in his **Third, Fourth and Fifth Causes** of Action that he received inaccurate payments under the Bank's Long Term Disability Plan while he was on a disability leave.  Plaintiff became disabled under the Plan in <u>2008</u>, but argues that the Bank should have paid him according to the benefits calculation in place for employees who became disabled in <u>2009</u>.  Plaintiff's claims fail because: (a) they are preempted by ERISA; (b) Plaintiff failed to exhaust internal remedies; (c) Plaintiff sued the wrong entity; and (d) Plaintiff received proper payments under the fully integrated Plan.

<u>Commission Calculation Claims</u>.  Plaintiff's **Second Cause of Action** under California Labor Code Section 221 claims that the Bank unlawfully deducted wages from Plaintiff's commissions for waived loan fees and charges, underage (lower profits which occur where Plaintiff agrees to a mortgage interest rate that is lower than published rates).  Plaintiff also argues it was unlawful to split certain of his commissions with his assistants.  Plaintiff's claims fail because the fee and underage deductions were consistent with Plaintiff's fully integrated Compensation Plan, and Plaintiff voluntarily agreed to the commission splits with his assistants.

<u>Implied Covenant Claims</u>.  Plaintiff's **Fifth Cause of Action** alleges, in part, that the

1    Bank breached an implied covenant by allegedly (a) setting interest rates in bad faith and

2    artificially high so as to cause him to incur "underage" to compete with the Bank's competitors;

3    and (b) preventing Plaintiff from receiving referrals from certain banking centers.  Neither claim

4    survives because the alleged covenant cannot be read into Plaintiff's integrated Compensation

5    Plans.  In addition, Plaintiff has no evidence that the Bank set interest rates in bad faith.

6    Moreover, when Plaintiff learned that he would not receive referrals from other banking centers,

7    he continued in his employment with the Bank, thus, accepting any alleged change to his prior

8    agreements.

9         **Fraud Claims Regarding PFUN.**  Plaintiff's **Seventh and Eighth Causes of Action** allege

10   fraud and negligent misrepresentation regarding the Bank's "PFUN" policy.  PFUN allowed a

11   Bank loan officer to lower mortgage interest rates from listed rates in order to compete for a loan,

12   with the resulting loss in profit being shared by the Bank and the loan officer's commission.

13   Plaintiff claims that a Bank employee told him that all loan officers were required to share in the

14   lowered profit, but later learned that loan officers in other regions were not required to do so.

15   Plaintiff's claims fail, however, because he cannot prove that the alleged misrepresentations were

16   intentional or negligent, he justifiably relied on them or suffered damages.

17        **Barred Claims.**  Certain claims for unreimbursed expenses in Plaintiff's **First, Second**

18   **and Third Causes of Action,** are barred because Plaintiff participated in a prior class action

19   settlement and/or are barred by the statute of limitations.

20        **Business & Professions Code Claim.**  Plaintiff's **Sixth Cause of Action** for violation of

21   Business & Professions Code section 17200 is tied to Plaintiff's other meritless claims and,

22   therefore, fails for the same reasons.

23        As explained below, the Court should grant partial summary judgment of these claims.

24   **II.    STATEMENT OF FACTS**

25        **A.    Plaintiff Agreed To The Bank's Commission Compensation Plans.**

26        On September 14, 2004, Plaintiff joined the Bank as a Retail Account Executive, a

27   position later called a Mortgage Loan Officer ("MLO").[1]  Declaration of Michael D. Weil ("Weil

28   _____

[1] Plaintiff first worked for the Bank as an Account Executive from July 23, 2001 to October 31, 2002 reporting to Cindy Solis in the San Jose sales office.  Pl. Dep., 18:22-20:6, 22:16-26:13.

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH

1    Dec."), Ex. A (hereinafter "Pl. Dep."), 28:11-28:22, 32:23-34:1; Ex. 7. Working with a Bank

2    recruiter, Plaintiff negotiated and accepted the terms of his offer. Pl. Dep., 28:11-28:22, 32:23-

3    34:1, 132:11-25; Weil Dec.¶ 3, Ex. B. His offer letter provided for at-will employment. *Id.*

4          As an MLO, Plaintiff was responsible for originating sales of home loan products issued

5    on behalf of the Bank. *See* Pl. Dep., 34:12-35:12; Weil Dec. ¶ 4, Ex. C. Plaintiff was paid on a

6    commission-basis and signed and accepted a Retail Sales Account Executive Agreement and a

7    Retail Account Executive Compensation Plan that governed the terms and conditions of his

8    employment and pay. Pl. Dep., 32:23-34:1, 34:12-35:12, 35:17-36:14; Weil Dec. ¶¶ 3-5, Exs. B-

9    D. Thereafter, Plaintiff's pay was governed by new compensation plans on an annual basis. Pl.

10   Dep., 36:15-24, 126:18-127:5, 127:10-17, 127:21-128:18; Weil Dec. ¶¶ 7-10, Exs. F-I . These

11   compensation plans were fully integrated. Pl.'s Dep., 127:10-17, 127:21-128:4, 128:3-10,

12   128:11-18; Weil Dec. ¶¶ 7-10, Exs. F at D00678, G at D00693, H at D00712, I at D00731.

13         When Plaintiff rejoined the Bank, Plaintiff decided to work near his home in Folsom,

14   California,[2] which was in the Los Angeles/Central Valley region, but report to his prior Sales

15   Manager, Cindy Solis, in the Northern California Bay Area region.[3] *Id.*, Pl. Dep., 31:18-32:21.

16   After Solis left the Bank, Plaintiff was assigned to report to Wayne Perry, the Sales Manager for

17   the Danville Sales Office. *Id.*, Pl. Dep. at 18:22-19:17, 38:9-13. When Plaintiff began reporting

18   to Perry, the Northern California Regional Executive, to whom sales managers reported, was

19   Charles Putris. Pl. Dep., 20:19-21:1. Later, Ann Thompson moved into that position. Pl. Dep.,

20   28:23-29:5, 40:5-13.

21   **B.    The Bank Reconciled Underages, Waived Fees and Plaintiff's Assistant's**
             **Commissions With Plaintiff's Commissions.**
22
            Plaintiff's unlawful deduction claims arise from the terms in his compensation plan, such
23
     as "underage" charges and loan fees. The Bank provides background for these claims below.
24
            **1.     The Bank's Overage/Underage Policy**
25
            Many factors influence mortgage pricing, including fluctuations in the real estate and
26

27   ───────────────
     [2] Plaintiff had moved to Folsom after his first stint with the Bank. Pl. Dep., 26:17-27:7.
28   [3] The Bank's retail mortgage lending business was divided into different regions including a Los
     Angeles/Central Valley and Northern California Bay Area region. Pl. Dep., 42:18 – 43:1.

                                        DEFENDANT'S NOTICE OF MOTION AND MOTION
                                        FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
                                        SAME, CASE NO. CV 09-05978 WH

financial market. *See* Pl. Dep., 37:17-22; 201:6-25.   Each day, lenders like the Bank furnish a

rate sheet to MLOs listing rates for the various mortgage products it offers.  Pl. Dep., 37:15-38:8;

To give MLOs flexibility in competitive sales, the Bank's "underage" policy –

incorporated into each of Plaintiff's compensation plans – allowed MLOs to undercut the

published price (*e.g.*, by offering a rate discount or waiving fees) and sell loans at an "underage"

in order to secure a loan in a competitive situation.  *Id.*; Pl. Dep. 147:1-148:23; Weil Dec. ¶¶ 7-

10, Exs. F-I (pp. D675, D690, BM145, BM124).[4]  By offering underage, an MLO agreed to

absorb at least part of the loan price reduction by reducing his or her commission.  *Id.*   In

applying underage, Regional Executives had discretion to approve uneven splits between the sales

office and the MLO.  *Id.*  Plaintiff agreed to follow the Overage/Underage policy and admitted

that it was always his choice to incur underage.  Pl. Dep., 37:15-38:8, 147:1-148:23; Weil Dec. ¶

11, Ex. J.  As explained below, Plaintiff's claims that these deductions were unlawful fail.

2.   **Plaintiff's Compensation Plan Provided His Commissions Would Be Reconciled With Waived Fees**

Plaintiff's Compensation Plans also explained how certain fees would be carried forward

against future compensation and recovered before compensation was earned.  Pl. Dep., 36:15-24,

126:18-127:5,127:10-17, 127:21-128:18; Weil Dec. ¶¶ 7-10, Exs. F-I.  Any loan fees that an

MLO chose to reduce, waive, or failed to collect would be recovered before commission

compensation was earned.  *Id.*  The Compensation Plans also stated that any failure to lock an

interest rate before it changed per Bank guidelines or a misquoted interest rate would be treated as

an underage and would be the MLO's sole responsibility.  *Id.*  As with uncollected fees,

misquotes and rate lock failures would also be recovered before future compensation was earned

as part of the commission calculation.  *See id.*  The Compensation Plans further provided that

"curtailments" – when a customer partially or fully pays off the balance of a loan within 60 days

after funding – would be reconciled against Plaintiff's future compensation before it was earned.

*Id.*  As explained below, Plaintiff's claims that these were improper deductions fail.

---

[4] Within certain limitations, MLOs were also permitted to induce a borrower to pay more than the posted price and incur an "overage," and earn additional compensation. *See* Pl. Dep., 147:1-148:9, 148:17-23; Weil Dec. ¶ 11, Ex. J.

3.      **The Bank Provided Plaintiff With A Paid Full-Time Assistant And Plaintiff Chose To Hire Another Assistant.**

While at the Bank, Plaintiff achieved "Platinum Club" status – the top 1 or 5 percent of the company nationally for loan sales – beginning in 2006. Pl. Dep., 86:2-13. One perk of making Platinum Club was the option to use an assistant paid for by the Bank. *Id.* at 86:18-24; 88:9-12. After Plaintiff achieved Platinum Club status, the Bank provided him with an Account Executive Assistant ("AEA"), Cristen Hampton, whose entire salary was paid by the Bank. *Id.* at 88:9-20; 89:10-90:14; *and see id.* at 85:19-23; Weil Dec. ¶ 6, Ex. E. Although it was not required by the Bank, Plaintiff voluntarily chose to provide supplemental compensation to Hampton out of his commissions, based off his monthly production in funded loan volume, by asking the Bank to split some of his commissions with her. *Id.* at 90:15-92:1; 92:25-93:4. At a later date, Plaintiff hired a second AEA, Lisa Madsen, to assist him. *See id.* at 93:5-94:12. Plaintiff chose to hire Madsen, voluntarily elected to pay her out of his commissions, and voluntarily offered her supplemental compensation. *Id.* at 95:18-99:15; Weil Dec. ¶¶ 20-21, Ex. S ["Perry Dep."] at 270:16-271:6, Ex. T.[5] As explained below, Plaintiff's claims that the Bank unlawfully deducted these commissions fail.

C.      **The PFUN Policy Applied To Every Employee In Plaintiff's Region.**

Plaintiff's fraud claims arise from alleged misstatements about the Bank's PFUN policy. PFUN was another tool the Bank offered to MLOs to lower a loan's stated pricing if facing a competitive offer from another lender. Pl. Dep., 228:23-229:12, 245:21-247:4. Unlike underage, using PFUN allowed an MLO to lower the price on a mortgage loan <u>without</u> decreasing his or her commission, and the cost of the lower interest rate would be absorbed by the regional office. *Id.*; Pl. Dep., 245:21-247:4. As with regular underage, individual MLOs had discretion to request PFUN. Pl. Dep., 204:18-20; 221:11-12.

To request PFUN, Plaintiff would submit a request to his Sales Manager, which would then be forwarded to the Regional Executive for approval. *See* Pl. Dep., 221:16-222:23; 224:15-

---

[5] Plaintiff claims that Matt Vernon –Ann Thompson's boss – once told him verbally that the Bank would pay for the salary of Plaintiff's second AEA but then reneged on the commitment. *See* Pl. Dep., 95:18-98:16. Whether or not this is true, it is immaterial and does not alter Plaintiff's later decision to voluntarily pay his second AEA out of his commissions. *Id.* at 98:20-22.

1  226:25. Plaintiff admitted that the Bank had discretion to approve or disapprove PFUN requests.

2  Pl. Dep., 221:11-15.

3       The Northern California region used a "calculator" to divide the cost of the lowered

4  interest rate between PFUN (which was limited) and conventional underage; Plaintiff had access

5  to this caclulator.  Pl. Dep., 221:16-223:12; 224:15 – 225:24; Weil Dec., ¶ 17, Ex. P ["Thompson

6  Dep."], 70:18 – 72:13.  In other words, part of the cost of the lowered interest rate would be

7  absorbed by the Bank and part was absorbed by the MLO as ordinary underage (explained

8  above).  In his fraud claims, Plaintiff claims that a Bank employee misrepresented that <u>all MLOs</u>

9  would incur an underage if they used PFUN to lower an interest rate on a loan.  Plaintiff claims

10  he later found out that MLOs outside his region did not incur underage for using PFUN.  As

11  explained below, Plaintiff's fraud claims fail.

12       **D.      Plaintiff's Disability Benefits Are Provided Under An ERISA Plan.**

13       Plaintiff also alleges several causes of action that he received inaccurate benefits while he

14  was on a disability leave.  The Bank voluntarily offers monthly LTD benefits to associates who

15  suffer a disability lasting more than 26 weeks.  *See* Pl. Dep., 162:15-163:18, Ex. 27, pp. 17, 25,

16  30, 92, 94-99, 198.  The "Summary Plan Description" in effect during Plaintiff's employment

17  was the Bank's Associate Handbook 2005 ("Handbook").  *Id.* at 188-98.[6]  Plaintiff received the

18  Handbook, accessed it online, and was bound by its policies.  Pl. Dep., 162:15-165:4; Weil Dec. ¶

19  ¶ 12-13, Exs. K, L.

20       As described in the Handbook, MetLife insured the Bank's LTD Plan and provided

21  monthly LTD benefits for disabled Bank employees.  *Id.* at 162:15-163:18; Weil Dec. ¶ 12, Ex.

22  K, D00647.  The Plan Administrator – the Bank of America Corporation Corporate Benefits

23  Committee – also delegated discretionary authority to MetLife to determine eligibility for

24  benefits, construe the terms of the Plan, and resolve all questions relating to benefits claims under

25  the Plan.  *See id.* at 162:15-163:18; Weil Decl. ¶ 12, Ex. K, D00639;  *see* Weil Dec. ¶¶ 22-23, Ex.

---

26  [6] Other Plan documents, available to any associate upon request, are the Bank of America Group

27  Benefits Program, the Certificate of Insurance (or the "Employee Benefit Plan") with its three associated LTD Riders that describes the LTD benefits available, and the 2008 Summary of

28  Material Modifications to the Associate Handbook 2005 and its 2006 Addendum (collectively the "Plan").  Joseph Dec. ¶ 5, Exs. 1-3.

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH

1    U ("Joseph Dep.") at 37:13-39:6, 53:5-55:7, Ex. V.  Background of LTD Benefits Calculations.

2         Under the LTD Plan, the Bank provided full-time associates with a core level of LTD

3    coverage up to 50% of annual base pay.  Weil Dec. ¶ 12, Ex. K, D00544; Joseph Dep. 50:9-51:5.

4    Associates could elect for supplemental coverage up to 60% annual base pay plus eligible bonus

5    amount.  *Id.*  Plaintiff elected for the greater coverage of 60% of his annual base pay plus bonus.

6    Pl. Dep., 177:3-6.

7         A disabled associate's monthly LTD payment was calculated based on the associate's pre-

8    disability earnings.  *See* Joseph Dep., 65:4-67:9, 80:25-81:10; Weil Dec. ¶¶ 12, 24, Ex. K,

9    D00546, Ex. W.  The LTD "Employee Benefit Plan" defines "Predisability Earnings" as wages

10   "as of the day before your Disability began."  Declaration of Michael Joseph ["Joseph Dec."], ¶5

11   Ex. 2 at D02168.  The Handbook also provided that a commissioned associate's monthly LTD

12   benefits would be calculated based on a period "preceding the date your disability began."  Pl.

13   Dep., 165:5-19; Weil Dec. ¶ 14, Ex. M.

14        For associates who earned wages primarily on a commission basis, like Plaintiff, the

15   Bank has used different methods to calculate an associate's pre-disability earning.  Until 2007,

16   the Bank used the method in the Handbook, which calculated pre-disability earnings based on the

17   12 months of an associates' compensation immediately preceding the date of disability (the "12-

18   month rolling rate").  *See* Pl. Dep., 165:5-19, 177:11-178:2; Weil Dec. ¶ 14, Ex. M; Joseph Dec.,

19   ¶¶ 6-7.

20        Beginning in 2007, however, the Bank adopted a new formula for calculating a

21   commissioned associate's pre-disability earnings, which is called the Adjusted Base Benefit Rate

22   (or "ABBR").  Joseph Dep., 43:10-20; 45:6-15.  On an annual basis starting in 2007, the Bank

23   sent letters to all commissioned associates describing how the ABBR formula would be derived

24   for disabilities occurring in the following Plan Year (i.e., the 2007 letter described the ABBR

25   formula for the 2008 Plan Year.)  *See* Joseph Dep., 72:24-73:6, 81:13-83:6; Weil Dep. ¶ 28, Ex.

26   AA; Joseph Dec. ¶8.  At the end of 2007, the Bank sent a letter to commissioned associates

27   explaining that their ABBR for disabilities occurring in 2008 would be based on their total 2006

28   compensation, as opposed to a rolling 12-month calculation (the "2007 ABBR letter").  Joseph

Dec. ¶9, Ex. 4.[7]

1.      **Adjustments To Plaintiff's LTD Benefits Were Made In His Favor.**

Plaintiff began a disability leave on July 25, 2008. Pl. Dep., 30:8-16, 118:21-23, 165:24-166:1, 168:15-170:5; Weil Dec. ¶ 15, Ex. N. After exhausting a mandatory waiting period on short-term disability, Plaintiff began receiving LTD benefits from MetLife in January 2009. Pl. Dep., 29:18-30:11, 174:19-175:25; Weil Dec. ¶¶ 12, 37, Ex. K at D00544, Ex. JJ.

Because Plaintiff's disability began in 2008, Plaintiff's pre-disability earnings were calculated based on his 2008 ABBR, as set forth in the 2007 ABBR letter. *See* Joseph Dep., 65:4-67:9; Weil Dec. ¶ 24, Ex. W; Joseph Dec. ¶¶9-10, Ex. 4. The 2008 ABBR was calculated from Plaintiff's 2006 total compensation. *Id.* Accordingly, MetLife paid Plaintiff LTD benefits at $285,583. *See* Joseph Dep. 65:4-66:24, 67:14-68:1, 77:8-79:18; Weil Dec. ¶¶ 24-27, Exs. W-Z; Joseph Dec., ¶12.

In or around March 2009, Plaintiff complained to Michael Joseph, a Bank employee in charge of the Pay and Benefits Escalation Team, that his LTD benefits were not based on the Handbook's calculation. *See* Joseph Dep. at 69:8-70:11; 89:21-90:6; Weil Dec. ¶ 30, Ex. CC; Pl. Dep. at 177:22-180:1; 187:2 – 11.[8] The Bank gave Plaintiff the benefit of the doubt that he did not receive the 2007 ABBR letter and advocated to MetLife that it change Plaintiff's benefits calculation to use the 12-month rolling rate, which it did. *Id.* at 69:8 – 70:11; 185:20-187:11; *see* Joseph Dep., 84:10-85:17; 89:21-90:6; 91:5-93:8, 97:1-8; 98:12-100:4; Weil Dec. ¶¶ 30-31, Exs. CC-DD; Joseph Dec. ¶¶14-15. This change resulted in a windfall to Plaintiff because his average 12-month rolling rate of pay (as of the date of disability in 2008) was $302,479.57 – nearly $17,000 higher than his 2006 earnings, per his 2008 ABBR.[9] *See id* at 67:14-68:1; Weil Dec. ¶

---

[7] For example, if an associate became disabled on July 1, 2008, his LTD payments under the Handbook would be based on his earnings from July 1, 2007 through June 30, 2008. Joseph Dec., ¶10. Under the 2007 ABBR letter, his LTD benefits were calculated based on earnings from January 1, 2006 through December 31, 2006. *Id.*

[8] Plaintiff had complained prior that his bonus was not included in the LTD benefits calculation. The Bank adjusted this error. Pl. Dep., 177:22-180:9.

[9] Plaintiff later complained that his average 12-month rolling rate did not accurately reflect certain incentives he had received in 2008. *See* Pl. Dep. 178:3-180:9. Once again, per his request, Plaintiff's LTD benefits were recalculated. Retroactive pay was issued to Plaintiff to ensure that he received payment at the correct rate. *See id.*. The new average 12-month rolling rate was calculated at $351,993.74. Joseph Dec., ¶16.

1   25, Ex. X; Joseph Dec. ¶15.

2   **2.   Plaintiff Complained Again And Asked For A Higher Rate.**

3   Plaintiff raised another complaint about his LTD payments in or around May 2009.

4   Joseph Dec., ¶17, Ex. 5; Joseph Dep., 97:1-100:4; Weil Dec. ¶ 31, Ex. DD.   This time, Plaintiff

5   claimed that he had located a letter, dated September 29, 2008, describing the ABBR calculation

6   for Plan Year 2009 (the "2008 ABBR letter").   *See* Joseph Dep., 84:5-8; Joseph Dec., ¶17, Ex. 5;

7   Pl. Dep., 180:14-183:2, 187:12 – 21; Weil Dec. ¶ 16, Ex. O.   The 2009 ABBR letter provided that

8   employees who became disabled in 2008 would receive LTD benefits on 2007 compensation.   *Id.*

9   Plaintiff's 2007 compensation was higher than 2006 compensation and higher than the 12-month

10   rolling rate calculation.[10]   Thus, instead of using the average 12-month rolling calculation that he

11   had previously advocated for, Plaintiff asked the Bank to return to using the ABBR formula set

12   forth in the 2008 ABBR letter.   Joseph Dec., ¶17, Ex. 5; *see* Pl. Dep., 185:20-187:11.

13   The Bank and MetLife investigated this complaint and determined that Plaintiff's request

14   to be paid according to the 2008 ABBR letter was inconsistent with the Plan.   The LTD Plan

15   documents state that the LTD benefits rate is calculated based on the method in place on the date

16   an employee becomes disabled.   *See* Joseph Dep., 66:21 – 67:6;   100:10-103:22, 111:23-112:25;

17   Weil Dec. ¶¶ 32-33, Exs. EE-FF; Pl. Dep. 189:22-195:9.   That rate remains the same throughout

18   the employee's long term disability leave, even if the leave continues into another year.   *Id.* The

19   2009 ABBR letter (dated September 28, 2008) set forth how that rate would be calculated for

20   employees who became disabled in 2009 and thereafter received LTD benefits.   *Id.*   It did not

21   alter the rate for those employees who became disabled in 2008, like Plaintiff, and were already

22   on a disability leave.[11]   Ultimately, a decision was made not to violate the Plan and to not alter

23   Plaintiff's LTD benefits rate.   Joseph Dec. ¶21; *see* Pl. Dep. at 189:12-195:9.   The Bank informed

24   Plaintiff of this decision.   Pl. Dep., 193:7-195:9.

25

26   [10] Plaintiff's ABBR for Plan Year 2009 was calculated at $416,130.   Joseph Dep., 58:17-60:12;
Joseph Dec. ¶12.

27   [11] Joseph initially misunderstood how Plaintiff's LTD benefits should be calculated.   At one
point, he told Plaintiff he should be issued benefits based on his 2009 ABBR.   Joseph Dec.¶¶ 17-

28   19.   Joseph was in error, and the Plan documents control. *See Greany v. W. Farm Bureau Life
Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992).

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH

On November 8, 2010, Plaintiff made his first written claim to MetLife regarding his dispute over the calculation of his LTD benefits. *See* Docket No. 43, Ex. 1. After MetLife responded to his initial claim on December 8, 2010 and informed Plaintiff of his right to appeal their decision, Plaintiff filed an appeal with MetLife on January 7, 2011. *See id.*

## III.   PROCEDURAL BACKGROUND

Plaintiff initially filed suit in San Francisco County Superior Court on August 20, 2009. The Complaint alleged four causes of action: (1) failure to reimburse business expenses under Labor Code section 2802; (2) unlawful wage deductions under Labor Code section 221; (3) breach of the covenant of good faith and fair dealing; and (4) violation of Business and Professions Code section 17200. On October 23, 2009, Plaintiff filed a First Amended Complaint in state court that added causes of action for failure to pay wages in violation of Labor Code section 200 and breach of contract. *See* First Am. Compl. ¶¶31-47. The Bank answered the First Amended Complaint on December 21, 2009 and removed the action to this Court on the grounds that Plaintiff's contractual claims regarding his LTD benefits were preempted by ERISA. *See* Notice of Removal (Docket No. 1.) Plaintiff then filed his Second Amended Complaint on June 9, 2010, which added causes of action for fraud and negligent misrepresentation. *See* Second Am. Compl. ("SAC") ¶¶72-85.

## IV.   ARGUMENT

### A.   Plaintiff's Claims Regarding His LTD Benefits Fail.

Plaintiff's Third (in part), Fourth and Fifth (in part) [12] Causes of Action allege that Plaintiff should have received LTD benefits consistent with his 2009 ABBR letter *i.e.,* calculated based on his 2007 annual earnings. SAC, ¶¶36-37; 45-47; 54-56. These claims fail because: (a) they are preempted by ERISA; (b) Plaintiff failed to exhaust internal remedies; (c) the Bank is not a proper defendant; and (d) the payments were accurate under the LTD Plan.

### 1.   Plaintiff's LTD-related claims are preempted by ERISA.

An employee benefit plan covered by ERISA includes any plan established or maintained

---

[12] The Court may grant summary adjudication on part of a claim. *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("It is clear that Rule 56[d] authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .").

1    by an employer for the purposes of providing pension, disability, medical and similar benefits or

2    services.  29 U.S.C. § 1002(1)-(3); *Chamblin v. Reliance Standard Life Ins. Co.*, 168 F. Supp. 2d

3    1168, 1179 (N.D. Cal. 2001) (ERISA "applies as well to other employee benefits, including

4    disability insurance provided by employers").  Here, there is no legitimate dispute that the Bank's

5    LTD Plan is subject to ERISA.

6         ERISA contains two separate provisions relevant to the preemption analysis: Section

7    502(a) and 514(a).  *See* 29 U.S.C. §§ 1132(a) and 1144(a).  Section 502(a) provides the exclusive

8    remedy for loss or denial of ERISA benefits and, therefore, completely preempts state law claims

9    seeking such relief.  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("a suit by a

10   beneficiary to recover benefits from a covered plan. . .falls directly under § 502(a)(1)(B) of

11   ERISA, which provides an exclusive federal cause of action for resolution of such disputes").  "If

12   an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),

13   and where there is no other independent legal duty that is implicated by a defendant's actions,

14   then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Aetna*

15   *Health Inc. v. Davila*, 542 U.S. 200, 2010 (2004).

16        Here, part of Plaintiff's Third Cause of Action for unpaid wages (Cal. Labor Code section

17   200), Fourth Cause of Action for breach of contract, and part of the Fifth Cause of Action for

18   breach of an implied covenant seek benefits under the Bank's LTD plan.  Specifically, Plaintiff's

19   complaint states that: (a) he is eligible for LTD benefits (SAC ¶ 36); (b) under the Handbook and

20   a September 28, 2009 modification to the Handbook, he is entitled to certain LTD  payments (*see*

21   SAC ¶¶45, 50); and (c) the Bank did not accurately compensate him under the Plan (*see* SAC

22   ¶¶47-48, 54-56).  Thus, Plaintiff complains "only about denials of coverage promised under the

23   terms of ERISA-regulated employee benefit plans."  *Davila*, 542 U.S. at 211.

24        Moreover, the duties imposed by the LTD Plan do not arise independently of ERISA or

25   the Plan terms. Interpretation of the terms of the LTD plan form an essential part of Plaintiff's

26   claims, and liability would exist here only because of the administration of an ERISA-regulated

27   benefit plans.  *Davila*, 542 U.S. at 2133.  The Bank's potential liability under the LTD Plan

28   derives entirely from the particular rights and obligations established by the benefit plans

1    themselves.  Accordingly, Section 502(a) preempts all of Plaintiff's state law claims. *Id.*

2           Plaintiff's claims are also preempted under Section 514(a).  Section 514(a) of ERISA

3    preempts any state law claim that "relates to" or "has a connection with or reference" to an

4    ERISA plan.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). A state law claim "relates to"

5    an ERISA plan "if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97;

6    *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1500 (9th Cir. 1993) (through "one of the broadest

7    preemption clauses ever enacted" ERISA "supersedes any and all state laws [relating] to any

8    employee benefit plan").

9           "In evaluating whether a common law claim [refers to an ERISA plan], the focus is

10   whether the claim is premised on the existence of an ERISA plan, and whether the [plan's

11   existence] is essential to the claim's survival.  If so, a sufficient 'reference' exists to support

12   preemption." *Providence Health Plan v. McDowell*, 361 F.3d 1243, 1247 (9th Cir. 2004)

13   (citation omitted).  "In determining whether a claim has a 'connection with' an employee benefit

14   plan, courts in [the Ninth Circuit] use a relationship test.  Specifically, the emphasis is on the

15   genuine impact that the action has on a relationship governed by ERISA, such as the relationship

16   between a plan and a participant." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172

17   (9th Cir. 2004).

18          Here, Plaintiff's state law claims not only expressly reference the Bank's LTD Plan, but

19   also bear an impermissible connection with the LTD Plan.[13]  Indeed, this Court must review,

20   interpret and apply the LTD plan to determine whether Plaintiff succeeds on his causes action.

21   *See, e.g., Farr v. U.S. West, Inc.*, 58 F.3d 1361, 1365-66 (9th Cir. 1995) (ERISA preemption

22   applies where the precise damages and benefits plaintiff claims depend on employee benefit

23   plan).  Plaintiff's LTD benefits claims are therefore necessarily "premised on the existence of an

24   ERISA plan" and are preempted under Section 514(a).  *Providence Health Plan*, 361 F.3d at

25   1247; *DeVoll v. Burdick Painting Inc.*, 35 F.3d 408, 412 (9th Cir. 1994) (state law claims,

26   ────────────────
     [13] In particular, state law claims that relate to long term disability plans are preempted by ERISA.
27   *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) (injured employee whose long term
     disability benefits were terminated and reinstated several times could not bring tortious breach of
28   contract action against insurer); *Chamblin*, 168 F. Supp. 2d at 1179 (tortious breach of contract
     claim arising out of long term disability plan preempted).

including claim for breach of contract, that "relate to" administration of employee benefit plans where such claims attempt to recover benefits allegedly owed are preempted by ERISA).[14]

### 2.   Plaintiff's LTD Claims Are Precluded Because He Failed To Exhaust Internal Remedies.

The LTD claims also fail because Plaintiff has not exhausted internal Plan remedies.  An ERISA plan beneficiary must exhaust all administrative remedies _before_ initiating litigation. _Amato v. Bernard_, 618 F.2d 559, 566-568 (9th Cir. 1980) ("federal courts have [] authority to enforce the exhaustion requirement in suits under ERISA, and [] as a matter of sound policy they should usually do so").  Here, the LTD Plan contains an explicit claims process and requires exhaustion of administrative remedies before any legal action may be brought.

> No legal action concerning the claim may be brought unless and until all of the following have occurred:
>
> (a)   The claimant has submitted a proper written claim.
>
> (b)   The claimant has been notified that the claim is denied.
>
> (c)   The claimant has filed a written appeal with the review fiduciary for review of the denied claim.
>
> (d)   The claimant has been notified in writing of the decision of the review fiduciary or the review fiduciary has failed to take any action on the request for review within the time prescribed above. _See_ Joseph Dec. ¶5, Ex. 1, D02139.

Plaintiff first submitted a "proper written claim" to MetLife on November 8, 2010, well after he filed this lawsuit.  On January 7, 2011, for the first time, Plaintiff "appealed" MetLife's decision.  _See_ Docket No. 43, Ex. 1.  Thus, Plaintiff has not exhausted his internal remedies and cannot now pursue these claims in court.  _See Lewis v. John Hancock Mutual Life Ins. Co._, 6 F. Supp. 2d 244, 248 (S.D.N.Y. 1998) (where "[p]laintiff neither followed proper review procedures nor proffered a reasonable explanation why such review procedures were not followed[,]" ERISA claim "must fail for failure to exhaust administrative remedies").

---

[14] _Funkhouser v. Wells Fargo Bank, N.A._, 289 F.3d 1137 (9th Cir. 2002) (breach of contract claim preempted by ERISA); _Geweke Ford v. St. Joseph's Omni Pref. Care Inc._, 130 F.3d 1355, 1358 (9th Cir. 1997) (contract claim preempted); _Orozco v. United Air Lines, Inc._, 887 F.2d 949, 952 (9th Cir. 1989) (wage claim preempted).

### 3.   **Plaintiff Sued the Wrong Entity.**

Plaintiff's LTD benefits claims also fail because Plaintiff did not pursue them against the correct entity. The Bank delegated authority to administer its LTD plan to Bank of America Corporation Corporate Benefits Committee and MetLife. Joseph Dec. ¶5, Ex. 1 at D02123, Ex. 2 at D02184. Thus, under well-settled Ninth Circuit law, Plaintiff cannot pursue his claims against the Bank, and his LTD claims must be dismissed. *Gelardi v. Pertec*, 761 F.2d 1323, 1324 (9th Cir. 1985); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1286-87 (9th Cir. 1990); *cert. denied* 498 U.S. 1087 (1991); *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 417 (9th Cir. 1990).[15]

### 4.   **Plaintiff received benefits consistent with the Plan.**

Even if Plaintiff could move forward with his LTD benefits claims, Plaintiff's claims still fail because he was paid properly under the Plan. Federal law governs the interpretation of ERISA plans but courts may examine state law if it is consistent with the goals and objectives of ERISA. *See Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985). When interpreting an ERISA contract, courts should assign meaning to terms "in an ordinary and popular sense as would a [person] of average intelligence and experience," *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990), and should not "artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Babikian*, 63 F.3d at 840 (internal quotation marks and citation omitted).

Here, MetLife paid Plaintiff's pre-disability earnings for his LTD benefits according to the 12-month rolling rate in effect when his disability began, per his request. Plaintiff claims that the 12-month rolling rate set forth in the Handbook was later modified by the 2008 ABBR letter and that he should be paid according consistent with his 2007 annual earnings. *See* SAC ¶56. Plaintiff is mistaken.

Under California law, a contract modification "only supersedes those terms to which it

---

[15] Plaintiff also acknowledged that MetLife pays his LTD benefits. Pl. Dep. at 29:18-23.

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, Case No. CV 09-05978 WH

1    relates." *Han v. Mobil Oil Corp.*, 72 F.3d 872, 876-77 (9th Cir. 1995).  Here, the 2008 ABBR

2    letter did not modify the LTD Plan's provision that LTD benefits are calculated based on the

3    method in place on the date an employee becomes disabled.  *See* Joseph Dec. ¶ 19, Ex. 2, at

4    D02168.  It only modified the method of calculating a commissioned associate's LTD for

5    employees who became disabled in 2009.  *See* Pl. Dep., 181:15-183:19; Weil Dec. ¶ 16, Ex. O.

6    Because Plaintiff claimed he did not receive a letter setting forth his 2008 ABBR calculation, he

7    received benefits according to the Handbook's (higher) twelve-month rolling rate.  Plaintiff's

8    claim that the 2009 ABBR now applies to his disability that began in 2008 contradicts the Plan

9    and is meritless.

10          Plaintiff may still argue, as he did in support of his breach of covenant claim, that "further

11   oral agreements" modified the LTD plan.  SAC ¶50.  The only "further oral agreements" upon

12   which Plaintiff appears to rely are statements by Michael Joseph and Scott Schraeder, members of

13   the Bank's Human Resources Department, that Plaintiff would be paid LTD benefits pursuant to

14   the 2008 ABBR letter.  *See* Pl. Dep. at 189:12-193:16.  However, under ERISA, such oral

15   representations cannot change the written terms of an ERISA plan.  29 U.S.C. § 1102 (requiring

16   that every employee benefit plan be established and maintained pursuant to a written instrument);

17   *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (prohibiting oral

18   modifications to ERISA plans); *cf. Williams v. Caterpillar, Inc.*, 720 F. Supp. 148 (N.D. Cal.

19   1989) (allowing oral modifications would prevent nationwide uniformity of plan

20   administration).[16]  Likewise, alleged promises from Joseph or Schraeder could not modify the

21   terms of Plaintiff's LTD Plan because the LTD Plan is fully integrated, and they are not

22   employees of MetLife, the insurer.  *See* Joseph Dec. ¶5, Ex. 1 at D02142.  In the end, Plaintiff

23   cannot prove that his LTD payments were inaccurate.

       **B.      Plaintiff's Fifth Cause of Action For Breach of The Implied Covenant Fails.**
24
            **1.      Plaintiff's claims regarding mortgage rates fails.**
25
            In addition to the LTD claim, Plaintiff's Fifth Cause of Action for breach of an implied
26

27   _____
     [16] *See Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir. 1989) (holding that promise to
28   increase benefits from those in plan was impermissible oral modification to a plan); *Straub v. W.
     Union Tele. Co.*, 851 F.2d 1262 (10th Cir. 1988) (same).

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH

covenant alleges that the Bank set its mortgage interest rates at elevated levels to deprive Plaintiff

of commissions when he sold a mortgage using an underage or PFUN.  SAC ¶¶ 51-53.  Plaintiff's

claim is absurd.

"The covenant of good faith is read into contracts in order to protect the express covenants

or promises of the contract, not to protect some general public policy interest not directly tied to

the contract's purposes."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988).  An

implied covenant "cannot impose substantive duties or limits on the contracting parties beyond

those incorporated in the specific terms of their agreement."  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.

4th 317, 349-50 (2000)

The method for calculating Plaintiff's compensation was set forth in integrated

Compensation Plans.  Plaintiff cannot assert implied covenant claims about extraneous conditions

not implicated by his agreements.  Those Plans make no reference to mortgage interest rates the

Bank is required to set.  In any event, Plaintiff cannot submit any evidence that the Bank's

mortgage rates were not set in good faith. Pl Dep., 201:6 – 203:21.  Plaintiff bases this entire

claim on his observation that the Bank's interest rates were often higher than its competitors and

hearsay and double-hearsay statements of one lower level manager, Harold Michaud.  *Id.*; 40:14-

41:20; 216:11 – 218:9.  This is insufficient to withstand summary judgment.

**2.**   **Plaintiff's implied covenant claim regarding referrals sources fails.**

Plaintiff also claims the Bank breached an implied covenant by telling him he had to stop

accepting referrals from a banking center in Folsom.  Plaintiff admits that no written contract

exists that provides he can receive banking referrals.  Pl. Dep., 207:13 – 25.  Instead, he claims

that a recruiter verbally told him the Bank would not restrict his ability to receive referrals from

the Folsom banking center.  *See* SAC ¶¶ 57-60; Pl. Dep., 208:1- 214:22.  This claim fails as well.

At-will employees, like Plaintiff, who continue working after an employer provides notice

of changed terms or conditions of employment, accept the changed conditions and have no action

for breach of contract or implied covenant as a matter of law.  *See DiGiacinto v. Ameriko-

Omserv*, 59 Cal. App. 4th 629, 635, 637 (1997) (employer may modify terms and conditions of

employment of current employees; continued employment is adequate consideration for

- 17 -

modification); *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 11 (2000) ("California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment"). Plaintiff cannot dispute that, as an at-will employee, the Bank had the right to modify the terms and conditions of his employment. He also cannot refute that he continued working for the Bank even after he was told to stop taking Folsom banking center referrals. Therefore, his implied covenant claim fails. Pl. Dep., 211:7-214:22. [17]

### C.    Plaintiff's Fraud And Negligent Misrepresentation Claims Fail.

Plaintiff's Seventh and Eighth Causes of Action for fraud and negligent misrepresentation vaguely claim that the Bank made the following alleged misrepresentations: (a) "that all AE's [or MLOs] were required to participate in PFUN" and (b) all AEs were allocated a portion of the PFUN if PFUN was sought by an AE to compete with a mortgage interest rate requested by a customer." SAC ¶¶ 73, 81; Pl. Dep., 248:17-249:14; 249:18-251:6. Plaintiff summarized these misstatements in deposition and claimed that Harold Michaud, a low level manager, said that all MLOs would incur an underage if they used PFUN to lower an interest rate on a loan. Pl. Dep., 246:3 – 25; 248:11 – 249:14. Plaintiff alleges that he later learned that this statement was supposedly false because MLOs outside his region sometimes received PFUN without incurring a separate underage. *See* Pl. Dep., 251:7-255:6; 255:12-256:17; *see* SAC ¶¶ 74, 82.

The elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The elements of negligent misrepresentation are: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damages. *Id.* Plaintiff's fraud and negligent misrepresentation claims fail because he cannot satisfy several of these elements.

### 1.    Plaintiff cannot prove intent or negligence.

First, Plaintiff cannot prove fraud or negligent misrepresentation because he cannot

---

[17] This claim should also be dismissed because, insofar as Plaintiff alleges a breach of contract, he should have brought that claim, not an implied covenant claim. *See Guz*, 24 Cal. 4th at 352.

1   demonstrate Michaud's intent to defraud or negligence.[18] No evidence suggests that Michaud

2   intentionally or negligently misrepresented anything when he told Plaintiff that everyone

3   "participated in" PFUN. *See* Pl. Dep., 258:23-260:15; *Jenkins v. MCI Telecomm. Corp.*, 973 F.

4   Supp. 1133, 1138 (C.D. Cal. 1997) (where plaintiff acknowledges that persons making allegedly

5   fraudulent statement "believed in what they were saying," plaintiff cannot prevail on fraud claim

6   as a matter of law).  In fact, Michaud accurately described how the Northern California Region

7   administered PFUN, which is what he was trying to describe.  *See* Weil Dec. ¶ 19, Ex. R

8   ["Russell Dep."], 25:23-26:17, 54:16-55:9, 58:23-62:13, 66:10-67:18, 79:2-81:13; Pl. Dep.,

9   248:17-249:14; Weil Dec. ¶ 18, Ex. Q ["Michaud Dep."], 83:1-11; 58:2-18.  At worst, Michaud's

10  statement was not clear, but there is certainly no evidence that he intended to mislead Plaintiff.

11              **2.    Plaintiff cannot prove justifiable reliance.**

12       Plaintiff also cannot prove that he justifiably relied on the representations about PFUN.

13  *Slivinksy v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("Justifiable reliance is a

14  necessary element of a cause of action for fraud.")  An employee cannot show justifiable reliance

15  as a matter of law where he has "become fully aware of all of the problems which he argues were

16  previously not disclosed to him, but nonetheless decide[s] to remain [as an employee]." *Rochlis*

17  *v. Walt Disney Co.*, 19 Cal. App. 4th 201, 215 (1993) (disapproved on other grounds in *Turner v.*

18  *Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1251 (1994)).

19       The facts in *Rochlis* are similar to those presented here.  In *Rochlis*, the plaintiff

20  negotiated employment with a new division of the defendant employer. *See id.* at 207.  During

21  negotiations, the employer made several representations to the plaintiff regarding the division's

22  conditions and the status of pending projects. *Id.* at 215.  However, within a few weeks after the

23  plaintiff began working, it became apparent to him that the statements the employer had made

24  were untrue. *Id.*  Plaintiff nevertheless remained in his position for several months and attempted

25  to turn around the division "in spite of his reservations." *Id.* at 209.  The Court held that, as a

26

27  _____

[18] *See, e.g. Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153-158-59 (1991) (demurrer to fraud claim based on insufficient proof of present intent to defraud sustained without leave to amend); *Randell v. Levi Strauss & Co.*, No. C 05-1047 CW, 2006 WL 1310464, at *6

28  (N.D. Cal. May 12, 2006) (summary judgment granted where no evidence of intent to defraud).

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH

1   matter of law, plaintiff did not justifiably rely on the alleged misrepresentations because he stayed

2   with his position after learning about the truth. *Id.*

3        Here, Plaintiff learned from conversations with MLOs from other regions that those

4   MLOs received PFUN without incurring any underage. *See* Pl. Dep., 251:7-255:6; 255:12-

5   256:17. Plaintiff testified that one conversation, with an MLO from Spokane, Washington, took

6   place before he went out on disability leave. *See id.* at 255:17-256:17. As in *Rochlis*, because

7   Plaintiff remained employed by the Bank after learning that other MLOs (allegedly) participated

8   in PFUN on different terms and, in fact, continued requesting PFUN until he went out on

9   disability leave, he did not justifiably rely on the misrepresentations. *See Rochlis*, 19 Cal. App.

10  4th at 209, 215; Pl. Dep. at 202:24-203:24; Perry Dep., 234:20-235:3, Weil Dec. ¶ 39, Ex. LL.

11       Plaintiff also cannot prove justifiable reliance on Michaud's statements because the terms

12  of Plaintiff's compensation were set forth in his Compensation Plans, which were fully integrated.

13  *See Slivinsky*, 221 Cal. App. 3d at 807 (employee cannot justifiably rely on oral promises that

14  contradict integrated agreement). Any statements about PFUN necessarily related to Plaintiff's

15  compensation, which was exclusively governed by the Compensation Plans.

### 3. Plaintiff's damages are too speculative.

16

17       Plaintiff's fraud and negligent misrepresentation claims also fail because Plaintiff's

18  damages are too speculative. Damages must be legally certain and not speculative or attenuated

19  from the illegal acts at issue. *See Lopes v. Vieirra*, No. CV-F-06-1243, 2010 U.S. Dist. LEXIS

20  104417, at *69 (E.D. Cal. Sept. 30, 2010). Plaintiff claims that the alleged fraudulent statements

21  damaged him because they caused him to (1) continue his employment with the Bank and (2)

22  "fail[] to negotiate his compensation terms to avoid or at least reduce the amount charged to him

23  as part of PFUN." SAC ¶¶ 76-77.

24       Plaintiff has no evidence to support these assertions. First, Plaintiff continued to work at

25  the Bank after he supposedly learned that the Bank did not charge PFUN to other MLOs. Thus,

26  Plaintiff's actions prove that Plaintiff would not have terminated his employment with the Bank

27  after learning the "truth" about the PFUN policy. Second, the remainder of Plaintiff's damages

28  are based on speculation that Plaintiff (1) would have attempted to renegotiate his salary absent

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH

the Bank's alleged misrepresentations, (2) the Bank would have agreed to Plaintiff's demands, and (3) that Plaintiff's PFUN charges would have therefore been reduced by some indefinite amount. All three assumptions are unsupported by any evidence and are speculative. *See, e.g. Landmark Dev. Corp v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir. 1985) (affirming grant of summary judgment on fraud claim because plaintiff's damages were based on a "conclusory and speculative assertion"); *Champagne v. City & County of San Francisco*, No. C 06-05425, 2008 U.S. Dist. LEXIS 36651, at *13-*15 (N.D. Cal. May 5, 2008) (same).

**D.      Plaintiff's Second Cause of Action Fails, In Part.**

**1.      Plaintiff's claims regarding deductions for waived loan fees fail.**

Plaintiff's Second Cause of Action under California Labor Code section 221 argues that commission adjustments due to various loan-related fees such as "closing costs; loan processing fees; extension fees; underage charges (deductions for mortgages under the prevailing rate); uncollected/waived fee charges; misquote and rate lock failures; and curtailment charges" were unlawful wage deductions. *See* SAC ¶ 30. He also claims deductions from PFUN, which are effectively another form of underage. However, these fee-related adjustments to Plaintiff's commissions do not violate section 221 because the Bank made the adjustments in conformance with Plaintiff's employment contract.

"The right of a salesperson . . . to a commission depends on the terms of the contract for compensation." *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1330 (2006) ("[C]ases have long recognized, and enforced, commission plans agreed to between employer and employee, applying fundamental contract principles to determine whether a salesperson has, or has not, earned a commission."); *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217, 229 (2007).

"In referring to 'wages' paid, section 221 prohibits an employer only from collecting or receiving wages that have already been earned by performance of agreed-upon requirements." *Steinhebel v. Los Angeles Times Commn'cns, LLC*, 126 Cal. App. 4th 696, 707 (2005) (emphasis added). Accordingly, an employer is only liable under section 221 if it deducts pay after the employee has fulfilled the conditions required for a commission to vest as set out in the employee's contract. *See Koehl*, 142 Cal. App. 4th at 1130; *Steinhebel*, 126 Cal. App. 4th at 707.

1       In fact, the Division of Labor Standards Enforcement ("DLSE") approved a commission

2  plan virtually identical to the Bank's, recognizing that the very fees and underages at issue are

3  conditions integral to the calculation of commissions. [19]   Request For Judicial Notice, Ex. A

4  (DLSE Opinion Letter No. 1993.02.22, at 1).  In assessing whether a commission system that

5  required MLOs to share in the gain or loss on a loan upon closing was legal in California, the

6  DLSE distinguished the situation from compensation plans that might run afoul of section 221

7  noting that "'loss on the loan' is an integral part of the transaction which supports the commission

8  wage.  In other words, the cost of the sale of the loan would be a necessary ingredient in

9  determining the profit or loss on that particular transaction." *Id; see also Wamboldt v. Safety-*

10  *Kleen Sys.*, 2007 U.S. Dist. LEXIS 65683, * 30s (N.D. Cal. 2007) (Commission payments "based

11  on profitability do not constitute a recapture of wages prohibited by § 221.")

12       Here, Plaintiff agreed to a similar commission calculation method.  His Compensation

13  Plans state, "[b]ecause all earned income is net of adjustments, commissions and other

14  compensation referenced in this Plan are not earned until all such adjustments have been made."

15  *See e.g.*, Pl. Dep., 36:15-24, 128:3-10, 127:10-16, 127:21-128:2, 128:11-18; Weil Dec. ¶¶ 7-10,

16  Ex. H at BM 00136,  Ex. F at D00670-D00671, Ex. G at D00685-D00686, D00691, Ex. I at

17  D00719.  Under the explicit terms of Plaintiff's Compensation Plans, Plaintiff did not earn his

18  commission until the precise closing costs, interest rate, underages (including from PFUN) and

19  other terms of the loan were settled and accounted for by the Bank.  Similarly, Plaintiff chose to

20  incur any underage on a loan transaction and knew it would impact the ultimate calculation of his

21  commissions.  Pl. Dep., 38:5-8.  The Bank did not deduct any of the fees, underages (including

22  from PFUN), or charges related to the closing of the loan from Plaintiff's already earned

23  commissions, instead these were part and parcel of the calculation of Plaintiff's commissions and

24  indeed the conditions precedent to Plaintiff earning his commission in the first place.  Thus, the

25

26  [19] Federal courts may properly rely on DLSE opinion letters when interpreting California labor
laws.  *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1080 n.10 (9th Cir. 2005) ("[DLSE documents]

27  do constitute a body of experience and informed judgment to which courts . . . may properly
resort for guidance."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2010 U.S. Dist. LEXIS

28  122126, at *44-*45 (N.D. Cal. Nov. 15, 2010) (adopting DLSE opinion letter).

1    Bank's Compensation Plan does not violate Section 221.

2    **2.    Deductions to Plaintiff's commissions for his assistants do not violate Section 221.**

3        Plaintiff also contends that the Bank's facilitation of his voluntary choice to split

4    commissions with one Account Executive Assistant ("AEA") and his alleged payment of the

5    salary of another AEA violated Section 221. *See* SAC ¶ 30. As discussed above, agreed-upon

6    adjustments made to an employee's commissions before a commission is earned are lawful. *See,*

7    *e.g. Koehl*, 142 Cal. App. 4th at 1130-31. Plaintiff cannot dispute that he opted to engage the

8    services of AEAs, chose to pay one of them out of his commissions, and chose to split

9    commissions with another AEA. *See* Pl. Dep. at 90:15-94:12; 95:18-99:15.

10       In addition, no case law stands for the proposition that an employer is liable for

11   deductions to an employee's commissions specifically requested by the employee in writing. In

12   fact, California Labor Code section 224 provides for precisely this scenario: "The provisions of

13   Sections 221 [...] shall in no way make it unlawful for an employer to withhold or divert any

14   portion of an employee's wages when . . . a deduction is expressly authorized by the employee to

15   cover . . . deductions not amounting to a rebate or deduction from the standard wage . . . "

16   Plaintiff voluntarily elected to hire a second AEA and stated, in writing, that he "was willing to

17   pay [...] directly out of [his] commissions." Perry Dep. 270:16-271:6; Weil Dec. ¶ 21, Ex. T.

18   The Bank in no way forced Plaintiff to hire a second AEA. Pl. Dep., 95:18-99:15. Rather, the

19   Bank merely facilitated Plaintiff's choice to hire a second AEA by deducting from his

20   commissions upon his request. Plaintiff cannot show that these deductions came from his

21   guaranteed draw, so they did not impact his standard wage. Having chosen to authorize the

22   payment, Plaintiff cannot complain that the Bank made unlawful deductions.[20]

23   **E.    Plaintiff's Claims Arising Before 2006 Are Barred By Prior Settlement.**

24       Plaintiff's claims in his First, Second and Third Causes of Action for unreimbursed

25   expenses, unlawful deductions or unpaid wages that were incurred or due prior to January 1, 2006

26

27   _____

     [20] Plaintiff's Second Cause of Action also seeks "penalties" under Labor Code sections 215 or

28   216, but Plaintiff cannot recover those because the Legislature did not create a private right of
     action for violations of those sections. *Vicko Ins. Services v. Ohio Indemnity Co.*, 70 Cal. App.
     4th 55, 62-63 (1999). The Court should strike those allegations.

1   are barred by his participation in a class action settlement.[21]

2          Res judicata principles apply with full force to a judgment based on a stipulated class

3   action settlement. *Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1298 (9th Cir. 1981)

4   (relitigation of claims covered by class action settlement barred by res judicata); *Valerio v. Boise*

5   *Cascade Corp.*, 80 F.R.D. 626, 648 (N.D. Cal. 1978) (same).  A class action judgment following

6   settlement operates as an absolute bar to a subsequent suit based on any claim actually asserted in

7   the prior action, as well as "every ground of recovery or defense that may have been presented."

8   *Valerio*, 80 F.R.D. at 648.

9          On December 20, 2004, Timothy Franklin filed a wage and hour class action lawsuit

10  against the Bank in San Francisco Superior Court, which was subsequently removed to this Court

11  on February 5, 2005, as *Franklin et al v. Bank of America, N.A.*, Case No. C05 00519 CRB.  Req.

12  for Judicial Notice Ex. B.  On July 20, 2006, the *Franklin* court granted final approval of a class

13  action settlement.  The settlement class comprised all California MLOs who worked for the Bank

14  from December 20, 2000 through December 31, 2005.  The settlement agreement released "all

15  wage-and-hour claims, whether known or unknown, arising during the period from December 20,

16  2000 to December 31, 2005. . . . [Released Claims] include, but are not limited to, claims [under]

17  the California Labor Code, the wage orders of the California Industrial Welfare Commission;

18  California Business and Professions Code section 17200 *et seq.*; the California common law of

19  contract and tort; and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*" *Id.*

20         Plaintiff did not opt out of *Franklin* and received a settlement check.  *See* Pl. Dep.,

21  159:23-162:1, Weil Dec. ¶ 38, Ex. KK.  By the terms of the foregoing release, Plaintiff's claims

22  in this case for unreimbursed business expenses, for unlawful wage deductions, breach of

23  contract, breach of the implied covenant and for unpaid wages that occurred prior to January 1,

24  2006 are barred. *See* Weil Dec., ¶¶ 34-36, Exs. GG-II.[22]  *Officers for Justice v. Civil Serv.*

---

25  [21] Each alleged deduction or expense that was not allegedly reimbursed represents a separate
    claim subject to summary adjudication. *Aubry v. Goldhor*, 201 Cal. App. 3d 399, 406 (1988).
26  [22] In discovery, Plaintiff identified a number of expenses for which he claims the Bank failed to
    reimburse him. *See* Weil Dec. ¶ 34, Ex. GG.  Plaintiff alleges, for instance, that he incurred
27  expenses for office supplies on January 17, 2005 and for a client gift of moving boxes on
    October 25, 2005.  Those claims, and all others that pre-date December 31, 2005, are barred and
28  the Court should grant summary adjudication of those claims.

*Comm'n of City & County of San Francisco*, 688 F.2d 615, 632 n. 18 (9th Cir. 1982) ("[W]here a particular type of relief potentially available to the class members is compromised in the settlement process, it is mainly irrelevant whether or not that relief was specifically requested in the complaint."); *Kline v. United Parcel Serv., Inc.*, No., 2010 U.S. Dist. LEXIS 46237, at *7-*9 (N.D. Cal. Apr. 7, 2010) (holding plaintiff's overtime claim barred by release of "all known or unknown claims" in sexual orientation discrimination case).

### F.   The Statute Of Limitations Bars Claims Arising Before August 20, 2005.

Plaintiff also cannot recover alleged unreimbursed expenses, unpaid wages or deductions incurred before August 20, 2005 because those claims are time-barred. The statute of limitations for section 2802 claims is three years from the time the expenditure is incurred. *See* Cal. Code Civ. P. § 338(a). Similarly, under section 221 and 200, the statute of limitations is three years from the time the deduction is made or the wage is unpaid. *See* Cal. Code Civ. P. §338(a). In this case, both of these limitations periods are extended to four years by operation of Business & Professions Code section 17200. *See* Cal. Bus. & Prof. Code § 17208. Because Plaintiff first asserted his section 2802 and section 221 claims in his initial Complaint on August 20, 2009, any wage deductions, unpaid wages or unreimbursed business expenses that Plaintiff before August 20, 2005 are time barred. *See* Weil Dec., ¶¶ 35-36, Exs. HH, II.

### G.   Plaintiff's Business & Professions Code Section 17200 Claim Fails.

Plaintiff's Sixth Cause of Action under California Business and Professions Code section 17200, *et seq.* is derivative of his other causes of action. *See* Second Am. Compl. ¶¶65, 67. Because summary judgment is appropriate on Plaintiff's other claims and his Section 17200 claim is dependent on these claims, the Court must grant summary judgment on his Section 17200 claim. *See Harara v. ConocoPhillips Co.*, 377 F. Supp. 2d 779, 795-796 (N.D. Cal. 2005).

## V.   CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court grant partial summary judgment in its favor.

Dated: February 3, 2011

Orrick, Herrington & Sutcliffe LLP

*/s/ Katina B. Miner*
KATINA B. MINER
Attorneys for Defendant

DEFENDANT'S NOTICE OF MOTION AND MOTION
FOR PARTIAL SUMMARY JUDGMENT; MP&A ISO
SAME, CASE NO. CV 09-05978 WH